23 C.C.P.A. (Patents)

## In re CALOF.

### Patent Appeal No. 4600.

Court of Customs and Patent Appeals

June 15, 1942.

Eugene E. Stevens, of Washington, D. C. (Myron B. Stevens and Aaron R. Townshend, Jr., both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting all of the claims, 2 and 9 to 11, inclusive, in appellant's application for a patent for an alleged invention in improvements in "Lacing and Fastening Means".

The rejected claims read as follows:

"2. The device as defined in claim 11 in which said rotatable elements consist of internally threaded sleeves having a toothed periphery, and in which said edge spacing elements consist of metallic screw threaded shanks.

"9. Mechanisms for adjusting the proximity of adjacent elongated edges of flexible material at various points upon the length of said edges, comprising a plurality of movable elements positioned at spaced points upon the length of one of said edges, co-acting elements positioned at spaced points upon the length of the opposite edge and means for imparting movement to said movable elements to effect such adjustment.

"10. The device as defined in claim 9 in which said means for imparting movement to said movable elements comprises a manually operable slide, a track for said slide extending from one end to the other of said adjacent edges, said slide being manually operable longitudinally within said track, and engaging said movable elements successively and means for disengaging said slide from said elements.

"11. Improvements in a structure for adjusting the spaced relationship of two juxtaposed elongated edges comprising a longitudinally extending strip of a semi-rigid material attached to one of said edges, a second strip of similar semi-rigid material attached to the remaining edge, a plurality of rotatable toothed elements, a plurality of adjustable edge spacing elements secured to the first mentioned strip, said toothed elements being mounted on said edge spacing elements and extending across to engage with said rotatable elements and a slide in the form of a rack to engage with, and rotate said toothed elements."

No art was relied upon, the claims being rejected upon the sole ground that they cover inoperable structures.

A general description of the alleged invention taken from the involved application, is as follows: "My invention relates to an improved means for adjusting the proximity of two spaced edges with respect to each other, either throughout the whole length thereof, or at any particular part, and is designed to be of especial use in the case of fabric wrappings of various kinds, as for example corsets, where it may be desired to draw a portion of the edges more or less closely together to conform to the contour of the figure."

Appellant elected to prosecute his application on two of several species of the alleged invention shown by the drawings. The first species is shown in Figs. 1 to 4, inclusive, the second in Figs. 5 to 8, inclusive.

The sole issue before us is whether or not the device disclosed in the two forms

claimed is operative. In order that the reasons for the decisions below may be more readily understood we reproduce the drawings of the application. Figs. 1 to 4, inclusive, pertaining to the first of the claimed species, appear as follows:

The Primary Examiner correctly read those drawings in the light of the specification as follows:

"The device shown in Figs. 1 to 4 consists of a mechanism to unite two meeting edges for purpose of adjustment of an article of wearing apparel such as a belt or corset. To one of said edges there is secured a pair of channel members 1 and 2, Fig. 3. These members are spaced a fixed distance as shown, and receive between their facing channels a series of spaced sleeves 10. Each sleeve is said to consist of two ratchet portions 8, 9, separated by a reduced neck portion 11.

"The other meeting edge is faced with a light metal strip 6. Said strip has secured thereto spaced threaded metal shanks or bolts 7. Each shank passes through an aperture in the adjacent channel 1, engages a threaded aperture in its respective sleeve and then through an aperture in channel member. The shanks are shown as spaced horizontal lines upon Fig. 1. Thus by turning sleeves successively it is proposed to vary the space between the meeting edges of the fabric and hence the circumference of the belt. Applicant proposes to effect this successive turning by a slide 12 having a rack 17 on one side and an operating portion 19 projecting between the adjacent portions of the channels. The slide is dimensioned so as to be shiftable from a position at the right as shown in Fig. 3, where its rack engages ratchet 8, to a position at the left where its rack engages ratchet 9. It is

intended by this arrangement, that the sleeve may be reversely rotated and the meeting edges of the fabric correspondingly adjusted towards and from one another."

In holding the species claimed in those drawings to be inoperative the examiner stated as follows: "On page 5, lines 3 and 4 of the specification, applicant says that the directions of the ratchets of the portion 9 are reversed with respect to those of portion 10. If this is so and the parts are constructued as shown in Fig. 4, then it is clear that the teeth of rack 17 will not mesh with the ratchets of 9 in the manner necessary to operate sleeve 10 as intended and upon reverse movement of slide 16 (upward as shown in Fig. 4) the teeth of the rack will simply ride over the ratchets of portion 9 without turning it. Thus the device of Figs. 1 to 4 seems clearly inoperative."

We have studied the drawings, Figs. 1 to 4, in connection with the mode of operation of the device as described in the specification and can come to no other conclusion than that which was reached by the examiner. The ratcheted teeth of rack 17 shown in Fig. 4 are pointed in but one direction and while they would cooperate with ratchet 8 if impelled in a downward direction they certainly would ride over the reversed ratchet 9 which is intended to rotate in the opposite direction to ratchet 8.

Appellant contends that the species shown in Figs. 1 to 4 will operate as intended if the rack is removed bodily from one of the open ends of the slot 15 and reinserted in the other end of the slot. Or that if the rack with downwardly directed teeth in Fig. 4 be actuated downwardly through the lower open end of the slot 15 and reversed when again inserted in the same end of the slot so that the teeth would be upwardly directed, it would be in frictional brushing engagement with the ratchet portion 9.

Appellant argues that the Board of Appeals erred because it assumed that the slot 15 has closed ends. There is no specific disclosure in the application that the slot 15 has open ends. Furthermore there is nothing in the application suggesting that the rack may be taken from the slot and reinserted in a reversed or other position at either end thereof. If, as appellant contends, Fig. 1 shows an open slot, it should have been indicated thereon or in the specification. As that drawing appears no slot is shown that can be held to be such.

Figs. 5 to 8, inclusive, are intended to disclose the second claimed species of the device. Those figures are reproduced below:

The examiner read Figs. 5 to 8 as follows: "The device shown in Figs. 5 to 8 consists of means for affecting the adjustment of two edges comprising a metallic strip 20 attached to a flexible edge 21 of a fabric. A series of slender racks 22 are attached at intervals along the length of the strip 20. A channel structure 23 of the cross-sectional configuration illustrated in Fig. 6 is attached to the opposing fabric edge (not shown). Each of the racks extend through orifices formed in the sides 24 and 25 of the channel structure 23 and engages with pinion 26 which is mounted upon a stub shaft 27 fixed to channel structure 23, as shown in Fig. 7. A light coil spring 28 is interposed between the pinion and the web 29 of the channel. It should be noted that the teeth of each rack 22 is kept in engagement with the teeth of its respective pinion 26 by means of upturned lugs which extend across between sides 24 and 25. The distance between adjacent edges of the fabric is intended to be varied by turning pinions 26 and thus moving racks 22. To effect this turning applicant mounts a slide 35 within the channel structure. As shown in Fig. 8 this slide has racks 36 and 37 either of which may be brought into meshing engagement with a pinion 26 by moving the slide from side to side in the channel structure. Assuming the slide to be located at one side of the channel, it is then moved upwardly and as one rack 36 or 37, meshes with each consecutive pinion, such pinion is turned and the corresponding rack is translated (to the right of fig. 5) to decrease the distance between the fabric edge. However, as the slide leaves any given pinion and passes to the next one, there is nothing to hold it in the position to which it has just been rotated. Any tension tending to separate the fabric edges will at once cause the rack to move to the left to its original position. Thus this species like that of Figs. 1 to 4, appears to be inoperative for any useful purpose."

With respect to the decisions below on his second species, appellant in his principal brief seems to predicate error on what he states to be " * * * the Examiner's implicit assumption that there would necessarily and always be a powerful force present tending to separate the edges A and B to an extent such that the mechanism described would not have time to act in the manner set forth and would therefore slip. * * * *"

Appellant argues that as applied to corsets, for example, the necessary adjustment might well be made on the garment while lying spread open on a horizontal surface. That such adjustment could be made under the conditions set out by appellant might well be true. But when the garment as so adjusted would be placed upon a human figure, if as stated by the examiner there is nothing disclosed to prevent the rack 22 from moving under stress and thus permit a widening of the space between the edges of the fabric, the very purpose for which a corset is used would not be accomplished by reason of bodily pressure against the portion of the garment intended to restrain.

Subsequently to the oral argument here, counsel for appellant, by leave of court, filed a supplemental brief dealing with the embodiment of the second species of the invention shown by Figs. 5 to 8 and contending that the statement of the examiner, which held that there is nothing to hold the pinion 26 in the position to which it may be rotated by the movement of the slide, Fig. 8, to be erroneous.

Appellant argues in his supplemental brief that the examiner apparently overlooked the pinion locking teeth 34 allegedly shown in Figs. 5, 6 and 7. That argument was not even hinted at in his brief in chief and that is where it properly should have been made. The examiner did not expressly mention the pinion locking teeth and as far as the second species of the device is concerned, the Board of Appeals merely stated, "In the second form shown in Figs. 5–8, the rejection on the ground of inoperativeness is also deemed to be sound."

An examination of Figs. 6 and 7 shows that there is nowhere depicted any structure in which may be discerned pinion locking teeth. It will also be observed that there are no identifying numbers or marks upon Fig. 5 indicating flanges identifiable with Figs. 6 and 7. We are unable to see how Figs. 6 and 7 may be fittingly and understandably applied to Fig. 5.

It is true that in the specification appellant states that "Upon referring to Fig. 5 of the drawings accompanying this application, it will be noted that the flanges 32 and 33 are provided at intervals corresponding to the position of the pinions 26 with short toothed portions 34, and when the slide is not in operation, the pinion 26, under the influence of the coil spring 28, will be thrust out so that the teeth thereof engage with the teeth in the flange." And that "Before either of the portions 36 or 37 engage with the teeth of the pinions 26, however, the pinion itself is first depressed by the action of either of the curved portions 35, thus bringing it out of engagement with the toothed portions 34 on the flanges 32 and 33, and it will be noted that this disengaging action is completed just as the one or other of the portions 36 or 37 take hold on the teeth of the pinion."

However, we are unable, as were the tribunals below, in the light of what appellant states to be the manner of operating his device, to understand from Figs. 5 to 8 how that manner of operation can be accomplished.

Appellant alleges error in a statement, appearing in the decision of the board, in which the board said that "Apparently appellant admits that the device is inoperative and has attempted to amend the disclosure by changing the drawings." The board further stated "It is probable that it would not be difficult to change the disclosure so as to make the device operative, but this should have been discovered and should have been corrected before the application was filed." This opinion has been written on the assumption that appellant did not admit the device to be inoperative and nothing further need be said concerning that alleged error.

We find no error in the decisions below and accordingly the decision of the Board of Appeals is affirmed.

Affirmed.